UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

2016 SEP 30  AM 9: 08

UNITED STATES OF AMERICA,

Civil Action No.

Plaintiffs,

**CV 16 - 5442**

-against-

THE NEW YORK RACING ASSOCIATION, INC.,

**DeARCY HALL, J.**

Defendant.

**POLLAK, M.J.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned Assistant United States Attorney, acting at the request of the

Administrator of the United States Environmental Protection Agency ("EPA") avers as follows:

## NATURE OF ACTION

1.       This is a civil action brought pursuant to the Clean Water Act ("CWA"),

Sections 301, 309(b) and (d), and 402, 33 U.S.C. §§ 1311, 1319(b) and (d), and 33 U.S.C.

§ 1342, against the New York Racing Association, Inc. ("NYRA" or "Defendant"). Defendant

operates the Aqueduct Racetrack ("Aqueduct") where horse racing, training, and boarding of

horses occur. In connection with these operations, Defendant generated wastewaters that

included animal manure, animal wash water containing detergent, and feed waste. Defendant

discharged these wastewaters into New York City's and New York State's storm sewer system,

which then flowed into Hawtree and Bergen Basins, which as tributaries of Jamaica Bay are

1

DeARCY HALL, J.

POLLAK, M.J.

navigable waters of the United States. Defendant had no permits that authorized this discharge of process wastewaters. Defendant's wastewater discharges were unpermitted discharges of pollutants into navigable waters of the United States in violation of Section 301 of the CWA. Defendant's wastewater discharges also were violations of Defendant's State Pollutant Discharge Elimination System ("SPDES") Permit.

2.      Plaintiff seeks injunctive relief and civil penalties regarding Defendant's (a) unpermitted discharges of pollutants into the navigable waters of the United States; and (b) violations of its SPDES permit, as authorized by Sections 309(b) and 309(d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

## JURISDICTION, AUTHORITY AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under CWA Section 309(b), 33 U.S.C. § 1319(b) and under 28 U.S.C. §§ 1331, 1345, 1355 and 1367.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as CWA Section 309(b), 33 U.S.C. § 1319(b), because it is the judicial district in which the alleged violations of the CWA occurred and where the Defendant resides and is doing business.

5.      Notice of the commencement of this action has been given to the State of New York pursuant to Sections 309(b) and (f) of the Act, 33 U.S.C. §§ 1319(b) and (f).

## DEFENDANT

6.      The New York Racing Association, Inc. is a domestic not-for-profit corporation incorporated in the State of New York on September 12, 2008. NYRA is located at 110-00 Rockaway Boulevard, Jamaica, New York, 11417, in the County of Queens, New York. NYRA is a "person" within the meaning of section 502(5) of the CWA, 33 U.S.C. § 1362(5).

2

## STATUTORY AND REGULATORY REQUIREMENTS

7.     The CWA was adopted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

8.     To accomplish the objectives of the CWA, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" to waters of the United States, except, *inter alia*, in compliance with a permit issued by EPA or an authorized state pursuant to CWA Section 402, 33 U.S.C. § 1342.

9.     Section 502(12) of the CWA defines "discharge of a pollutant" to mean, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

10.     The CWA's definition of "pollutant" in Section 502(6) of the CWA, 33 U.S.C. § 1362(6), specifically identifies "biological materials . . . and agricultural waste discharged into water" as pollutants.

11.     Section 502(7) of the CWA defines navigable waters to be "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). EPA regulations promulgated pursuant to the CWA define the term "waters of the United States" to include, among other things: (1) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (2) all interstate waters; (3) all other waters such as intrastate lakes, rivers and streams (including intermittent streams), the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce; (4) tributaries of waters of the United States; and (5) certain wetlands (including wetlands adjacent to these waters). 40 C.F.R. § 122.2.

3

12.     The term "point source" is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, . . . [or] concentrated animal feeding operation . . . from which pollutants are or may be discharged."

13.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that EPA may issue to "persons" National Pollutant Discharge Elimination System ("NPDES") permits that authorize the discharge of any pollutant to navigable waters, but only in compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such terms and conditions as EPA determines are necessary to carry out the provisions of the CWA.

14.     Section 402 of the CWA, 33 U.S.C. § 1342, further directs the Administrator to prescribe conditions for NPDES permits to assure compliance with the requirements of the CWA, including conditions relating to data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

15.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that if a state requests, and the Administrator determines that the state complies with certain requirements, the Administrator may approve a state to administer the NPDES program. Pursuant to Section 402(b), the State of New York has been authorized by the EPA to administer its NPDES program since May 1, 1974.

16.     If a state NPDES program is approved pursuant to CWA Section 402(b), 33 U.S.C. § 1342(b), the Administrator of the EPA retains the authority to take enforcement action under CWA Section 309, 33 U.S.C. § 1319. *See* CWA Section 402(i), 33 U.S.C. § 1342(i).

17.     Federal regulations set forth a list of general conditions that all facilities issued

NPDES permits under state NPDES permitting programs must meet. Pursuant to 40 C.F.R.

§ 122.41(d), a permittee has a duty to "take all reasonable steps to minimize or prevent any

discharge . . . which has a reasonable likelihood of adversely affecting human health or the

environment." The monitoring and reporting requirements for a NPDES permit are dictated in

40 C.F.R. §§ 122.41(j)-(l).

18.     The term "facility" is defined in the regulations as "any NPDES 'point source'

[such as a concentrated animal feeding operation] or any other facility . . . (including land or

appurtenances thereto) that is subject to regulation under the NPDES program." 40 C.F.R.

§ 122.2; 33 U.S.C. § 1362(14).

19.     Requirements for discharges associated with Concentrated Animal Feeding

Operations ("CAFOs") are set forth at 40 C.F.R. § 122.23.  Operators are required to obtain a

NPDES permit for discharges or potential discharges associated with CAFOs.  40 C.F.R.

§ 122.23(a).

20.     An "animal feeding operation" ("AFO") is defined as a lot or facility where

animals have been, are, or will be stabled or confined and fed or maintained for a total of forty-

five days or more in any twelve-month period, and where crops, vegetation, forage growth, or

post-harvest residues are not sustained in the normal growing season over any portion of the lot

or facility.  40 C.F.R. § 122.23(b)(1).

21.     A "medium CAFO" is defined as an AFO that stables or confines within the range

of 150 to 499 horses. 40 C.F.R. § 122.23(b)(6)(i)(F).

22.     "Process wastewater" is defined as "water directly or indirectly used in the

operation of the AFO for any or all of the following: spillage or overflow from animal or poultry

5

watering systems; washing or cleaning or flushing pens, barns, manure pits, or other AFO

facilities; direct contact swimming, washing, or spray cooling of animals; or dust control.

Process wastewater also includes any water which comes in contact with any raw materials,

products or byproducts including manure, litter, feed, milk, eggs or bedding." 40 C.F.R.

§ 122.23(b)(7).

      23.     CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the Administrator to

commence a civil action for appropriate relief, including a permanent or temporary injunction,

when any person is in violation of CWA Section 301, 33 U.S.C. §§ 1311, or is in violation of any

NPDES permit condition or limitation in a NPDES permit issued under CWA Section 402,

33 U.S.C. § 1342.

      24.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who

violates, *inter alia,* Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition

or limitation in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342,

shall be subject to a civil penalty not to exceed $37,500 per day for each violation, pursuant to

the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L.

101-410), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note;

Pub. L. 104-134). See 40 C.F.R. Part 19; 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75346

(Dec. 11, 2008); and 78 Fed. Reg. 66643-01 (Dec. 6, 2013).

## GENERAL AVERMENTS

      25.     At all relevant times, NYRA has operated a facility located at 110-00 Rockaway

Boulevard, Jamaica, New York, 11417, in the County of Queens, New York, known as Aqueduct

Racetrack (the "Facility"). NYRA operates Aqueduct, where horse racing, training, and

boarding of horses occur. There are three concentric race tracks in the center of the Facility

(Main, Inner and Turf Course tracks); stadium seating and offices located to the west; and thirteen horse barns and a vehicle maintenance building located in the eastern portion of Aqueduct.

26.     According to NYRA representatives, Aqueduct houses up to 450 horses on site during the horse racing season (October through April). In NYRA's April 14, 2004 Notice of Intent submitted to the NYSDEC Bureau of Water Permits, it stated that there were a maximum of 532 horses held at the Facility for 45 days or more in any 12-month period. However, Facility representatives have stated that the Facility has never housed more than 500 horses and that there is insufficient space to accommodate more horses.

27.     The Facility qualifies, or qualified at a time relevant to this Complaint, as a "concentrated animal feeding operation" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), and 40 C.F.R. § 122.23(b)(2).

28.     The Facility further qualifies, or qualified at a time relevant to this Complaint, as a "medium concentrated animal feeding operation" as that term is defined in 40 C.F.R. § 122.23(b)(6)(i), because it houses between 150 and 499 horses. The characterization as a "medium" concentrated feeding operation is based on NYRA's representations that it houses no more than 450 horses.

29.     On November 28, 2000, NYSDEC, pursuant to its authority under Article 17 of the New York Environmental Conservation Laws, issued SPDES General Permit for Concentrated Animal Feeding Operations No. GP-99-01, with an effective date of July 1, 1999, and an expiration date of June 30, 2004. On April 14, 2004, NYRA submitted a Notice of Intent to NYSDEC Bureau of Water Permits to seek coverage under the CAFO General Permit. On April 29, 2004, NYRA obtained coverage under the SPDES General Permit for CAFOs

7

No. GP-99-01. On June 24, 2004, NYSDEC issued the current CAFO General Permit No. GP-04-02, with an effective date of July 1, 2004 (the "CAFO General Permit"). Although the CAFO General Permit had an expiration date of June 30, 2009, it has been administratively extended by NYSDEC and currently remains in effect. NYRA's CAFO General Permit coverage was automatically carried over from GP-99-01 to GP-04-02 as of the effective date of the latter permit.

30.     The CAFO General Permit authorizes NYRA to discharge pollutants associated with stormwater from the Facility to waters of the United States, under the conditions and limitations of the Permit.

31.     The CAFO General Permit includes the following conditions:

a.  Section VI.A. of the CAFO General Permit prohibits the "discharge of process wastewater from CAFOs to the surface waters of the State, except in accordance with Section VI.C." The CAFO General Permit Section I.AE. ii. defines process wastewater to include [d]irect contact swimming, washing, or spray-cooling of animals. The CAFO General Permit Section I.AE.v. defines process wastewater to include "[p]recipitation which comes into contact with any area where organic materials are stored, fed, or wasted. . . ."

b.  Section VI.C. refers to "25 Year-24 Hour Rainfall Events." Such Rainfall Events are defined in Section I.A. of the CAFO General Permit as "the maximum 24-hour precipitation event with a probable recurrence interval of once in 25 years . . ."

c.  Section VIII. of the CAFO General Permit requires that all CAFO owners and operators use Best Management Practices, including, as relevant here, Section VIII.C.xi., which provides that "[c]ollection, storage and disposal of liquid and solid waste should be managed in accordance with [Natural Resources Conservation Service of the United States Department of Agriculture

8

("NRCS")] standards." NRCS Conservation Practice Standard No. NY312, requires that clean water be excluded from concentrated waste areas to the fullest extent practical.

## Violations of the SPDES Permit

32. EPA conducted an inspection at Aqueduct on June 9, 2015.

33. At the inspection, EPA observed the following conditions at the Facility:

   a. Horse wash water containing detergent, manure, bedding, and feed produced at the wash pad area south of Barn 11 flowed into a storm drain located in the wash pad area south of Barn 11.

   b. Horse wash waters containing detergent, manure, bedding, and feed produced in sixty wash areas flowed into the storm drains located around the perimeters of the 13 barns in each of the wash areas.

   c. Material had spilled from the straw bedding and manure bins outside of Barn 2 onto the ground and was exposed to stormwater. Stormwater coming into contact with this area would flow downhill into the storm drains located between Barns 1 and 2.

   d. Straw bedding material, feed waste and manure that had been tracked outside Barn 2 and was exposed to stormwater. Stormwater coming into contact with this area would flow downhill into storm drains located between Barns 1 and 2.

   e. The storm drains located between Barns 1 and 2, the wash pad area drain south of Barn 11 and the storm drains located around the perimeters of the 13 barns are hydraulically connected to, and flow to a storm drainage system pump station wet well located in the southeast corner of the Facility.

34.     According to the 2013 and 2014 Annual Compliance Reports submitted by NYRA to NYSDEC, the Facility has generated and transferred to the sewer system an estimated 1.26 million gallons per year of process wastewater.  On information and belief, until February 29, 2016, when NYRA commenced holding and hauling process wastewaters, all of this process wastewater was discharged to the storm drains at the Facility.

35.     Based on drainage specifications provided by New York City Department of Environmental Protection ("NYCDEP") and the New York State Department of Transportation ("NYSDOT"), the on-site storm drainage system pump station wet well in the southeast corner of the Facility, is hydraulically connected, via a pump, to the NYCDEP separate stormwater sewer system located on North Conduit Avenue.  Waters from North Conduit Avenue stormwater sewer system then flows into the NYSDOT separate storm sewer system located south of the Belt Parkway and then, via a NYSDOT storm sewer outfall pipe, into the Hawtree Basin.

36.     The NYCDEP specifications also document that stormwater runoff from the northeastern portion of the Facility flows downhill and enters a NYCDEP catch basin at the intersection of 150th Avenue and 114th Street via overland flow.  Flow from this NYCDEP catch basin ultimately discharges to the Bergen Basin via a NYCDEP storm sewer system outfall pipe.

37.     The Hawtree and Bergen Basins are tributaries to Jamaica Bay.  They are located within the eastern portion of Jamaica Bay.  Eastern Jamaica Bay and associated tributaries are currently designated by NYSDEC as impaired due to ammonia, nitrogen, oil/grease, and pathogens.

38.     The Hawtree and Bergen Basins, as tributaries of Jamaica Bay, are navigable waters of the United States.  They also are New York surface waters.

10

39.     The conditions described in Paragraphs 33.a through 33.d, and 34 are unpermitted discharges of process wastewater pollutants into navigable waters of the United States in violation of the CWA, 33 U.S.C. § 1311, and Defendant's SPDES Permit.

40.     The conditions described in Paragraphs 33.a and b, and 34, also are unpermitted discharges to New York surface waters in violation of Section VI.A. of NYRA's CAFO General Permit.

41.     The conditions described in Paragraphs 33.a through 33.d are violations of NRCS Conservation Practice Standard No. NY312, incorporated as a requirement of NYRA's CAFO General Permit pursuant to Section VIII.C.xi., which requires that clean water be excluded from concentrated waste areas to the fullest extent practical.

## FIRST CLAIM FOR RELIEF
## UNAUTHORIZED DISCHARGES OF POLLUTANTS

42.     Paragraphs 1 through 41 above are reaverred and incorporated herein.

43.     At all relevant times, NYRA had coverage under the CAFO General Permit.

44.     On knowledge, information and belief, from at least August 1, 2011 through February 29, 2016, NYRA discharged pollutants from the Facility into a "navigable water" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7). These discharges were not authorized by the CAFO General Permit, in violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

45.     Each day of each unpermitted discharge by NYRA which reached waters of the United States is a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

46.     NYRA's discharge of pollutants without permit authorization violated CWA Section 301, 33 U.S.C. § 1311.  Thus, pursuant to CWA Sections 309(b) and (d), 33 U.S.C.

11

§ 1319(b) and (d), NYRA is subject to the imposition of injunctive relief and is liable for civil penalties not to exceed $37,500 per day.

### SECOND CLAIM FOR RELIEF
### FAILURE TO COMPLY WITH SPDES PERMIT CONDITION:
### UNAUTHORIZED DISCHARGE OF PROCESS WASTEWATER TO SURFACE
### WATERS

47.    Paragraphs 1 through 41 above are reaverred and incorporated herein.

48.    At all times during the relevant time period, NYRA failed to comply with Section VI.A. of NYRA's CAFO General Permit, in violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

49.    Each day of this permit violation is a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

50.    NYRA's violation of Section VI.A. of the CAFO General Permit violated CWA Section 301, 33 U.S.C. § 1311.  Thus, pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), NYRA is subject to the imposition of injunctive relief and is liable for civil penalties not to exceed $37,500 per day.

### THIRD CLAIM FOR RELIEF
### FAILURE TO COMPLY WITH SPDES PERMIT CONDITION:
### INSUFFICIENT ACTION TO ENSURE CLEAN WATER EXCLUDED FROM
### CONCENTRATED WASTE AREAS

51.    Paragraphs 1 through 41 above are reaverred and incorporated herein.

52.    NYRA's CAFO General Permit, at Section VIII.C.xi., requires that NYRA comply with NRCS Conservation Practice Standard No. NY312, which requires that clean water be excluded from concentrated waste areas to the fullest extent practical.

12

53.    At the time of the EPA inspection, the inspector observed that NYRA did not comply with this condition of the CAFO General Permit, in violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

54.    Each day of this permit violation is a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

55.    NYRA's violation of Section VIII.C.xi. of the CAFO General Permit violated CWA Section 301, 33 U.S.C. § 1311.  Thus, pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), NYRA is subject to the imposition of injunctive relief and is liable for civil penalties not to $37,500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America requests that this Court enter judgment on behalf of the United States against NYRA as follows:

1.    Pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), permanently enjoin Defendant as follows:

   a.    Prohibit the discharge of any pollutants from the Facility to navigable waters except in compliance with the terms of a SPDES permit and the Clean Water Act; and

   b.    Order Defendant to implement interim measures to minimize the discharge of pollutants from the Facility until such time as compliance with the Clean Water Act is achieved.

2.    Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the regulations promulgated thereunder (including the Civil Monetary Penalty Inflation Adjustment

Rule, 73 Fed. Reg. 75340 (2009)), assess civil penalties against Defendant not to exceed $37,500 per day for each violation;

     3.     Award the United States its costs in this action; and

     4.     Grant the United States such other relief as the Court deems just and proper.

Dated: September 30, 2016                        Respectfully submitted,

                                          ROBERT L. CAPERS
                                          United States Attorney
                                          Eastern District of New York
                                          271A Cadman Plaza East
                                          Brooklyn, New York 11201

By:                                        
                                        DEBORAH B. ZWANY (DBZ7987)
                                        Assistant U.S. Attorney
                                        (718) 254-6010
                                        (Deborah.Zwany@usdoj.gov)

Of Counsel:
PHYLLIS S. KAPLAN FEINMARK
Associate Regional Counsel
Chief, Water and General Law Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway - 16th Floor
New York, New York 10007